UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| JOSHUA WALTER, individually and as representative of a Class of Participants and Beneficiaries of the Kerry Inc. Savings Plan, | : : | |
| Plaintiff, | : | Case No. 21-cv-539 |
| vs. | : | Judge Brett H. Ludwig |
| KERRY INC., *et al.*, | : | |
| Defendants. | : : | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS KERRY INC., BOARD OF DIRECTORS OF KERRY INC., AND BENEFITS COMMITTEE OF KERRY INC.**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. LAW AND ARGUMENT ....................................................................................... 2

    A. *Hughes* Is a Limited Decision: It Rejected a Single Argument That is Not Integral to Defendants' Motion to Dismiss............................................................ 2

    B. *Hughes* Does Not Change the Stringent Pleading Requirements Applicable to the Complaint........................................................................................................... 4

        1. *Hughes* Does Not Disturb the "Meaningful Benchmark" Standard Applicable to "Excessive Fee" Cases. ....................................................... 4

        2. *Hughes* Did Not Kick the Can Down the Road to Summary Judgment. ................................................................................................ 5

    C. *Hughes* Instructed Courts to "Give Due Regard to the Range of Reasonable Judgments" Made by Fiduciaries. ....................................................... 6

    D. *Hughes* Did Not Address Standing or Other Arguments Made by Defendants. ............................................................................................................ 8

III. CONCLUSION......................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
  No. 20-C-901, 2021 U.S. Dist. LEXIS 166750 (E.D. Wisc. Sept. 2, 2021) ........................... 4

*Anderson v. Intel Inv. Policy Comm.*,
  No. 19-CV-04618-LHK, 2022 U.S Dist. LEXIS 3946 (N.D. Cal. Jan. 8, 2022) .................... 4

*Davis v. Salesforce.com, Inc.*,
  No. 20-cv-01753-MMC, 2021 U.S. Dist. LEXIS 73017 (N.D. Cal. Apr. 15, 2021) .............. 4

*Divane v. Northwestern Univ.*,
  953 F.3d 980 (7th Cir. 2020) ................................................................................... 3, 4, 5

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409, 425 (2014) ................................................................................................. 5

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ........................................................................................... 8

*Hughes v. Northwestern University*,
  595 U.S. __, 142 S. Ct. 737, 211 L. Ed. 2d 558 (2022) ............................................. *passim*

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ........................................................................................... 4

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ............................................................................................ 4

**Statutes**

ERISA ........................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5, 6

7th Cir. R. 54 ..................................................................................................................... 1

**I.      INTRODUCTION**

The Supreme Court's January 24, 2022, opinion in *Hughes v. Northwestern University*[1] is not the type of sweeping or game-changing ruling hoped for by some on both sides of the growing wave of ERISA[2] fee cases across the country. Rather, it is a narrow *per curiam* ruling that focused on, and rejected, a single thread of reasoning used by the Seventh Circuit below. (Namely, *Hughes* rejected any "categorical rule" that a fiduciary satisfies its duty to remove imprudent investments by allowing plan participants to choose from a wide range of investments). The Supreme Court did not decide whether, once that single thread is disregarded, the defendants' motion to dismiss should be granted or denied. Instead, the Supreme Court remanded the case to the Seventh Circuit to reevaluate that question for itself in light of context-specific circumstances, giving "due regard" to the range of reasonable judgments and difficult trade-offs all fiduciaries must make.[3]

This Court is in the same position here: *Hughes* does not dictate whether the Court ought to grant or deny Defendants' Motion to Dismiss; rather, *Hughes* simply removes from consideration one of the several grounds put forth by Defendants here. Removing that single argument does not change the outcome: Defendants' Motion to Dismiss should be granted because, among other things, the Complaint still fails to tell a plausible story that Defendants acted

---

[1] 595 U.S. __, 142 S. Ct. 737, 211 L. Ed. 2d 558 (2022).

[2] Capitalized terms and acronyms not otherwise defined have the meaning set forth in the Memorandum in Support of the Motion to Dismiss of Defendants Kerry Inc., Board of Directors of Kerry Inc., and Benefits Committee of Kerry Inc. ("Mem. Supp. Mot. Dismiss") (Doc. 11) and the Reply in Support of the Motion to Dismiss of Defendants Kerry Inc., Board of Directors of Kerry Inc., and Benefits Committee of Kerry Inc. ("Reply") (Doc. 16).

[3] While the Seventh Circuit has not yet issued a decision on remand, Circuit Rule 54 Statements setting forth the parties' statements of their positions as to the action that the Seventh Circuit should take in light of remand are due by March 18, 2022. *See* Docket Entry, *Divane v. Northwestern Univ.*, No. 18-2569 (7th Cir. Feb. 25, 2022) (Doc. 72).

imprudently, and Plaintiff still lacks standing to pursue his claim relating to the investment management fees associated with the R6 Share Class, an option in which he never invested.

Importantly, *Hughes* does not cast any doubt on the requirement that, to state a claim for breach of ERISA fiduciary duty based solely on excessive fees paid to a service provider, the complaint must tell a plausible story—supported by references to "meaningful benchmarks"—that the fiduciary's choices were objectively unreasonable. Moreover, *Hughes* reaffirms the need for courts to undertake a careful, context-specific analysis at the pleadings stage to determine whether an ERISA claim for fiduciary breach fails to state a claim. Indeed, the Supreme Court specifically directed the Seventh Circuit, when reevaluating the motion to dismiss on remand, to "give due regard to the range of reasonable judgments a fiduciary may make." 211 L. Ed. 2d at 565.

Using the careful, context-specific approach that takes into account a fiduciary's range of reasonable judgments, the Complaint here fails to plausibly allege that Defendants acted imprudently with respect to the recordkeeping fees paid by Plan participants (Counts I and IV), the inclusion of the R6 Share Class in the investment options available to Plan participants (Counts III and VI), and the fees associated with voluntary managed account services available to Plan participants (Counts II and V). Accordingly, *Hughes* supports granting the Motion to Dismiss in its entirety.

II.   LAW AND ARGUMENT

    A.   ***Hughes* Is a Limited Decision: It Rejected a Single Argument That is Not Integral to Defendants' Motion to Dismiss.**

Of the many grounds for dismissal raised in Defendants' Motion to Dismiss, *Hughes* addresses only one – a minor one at that. *Hughes* does not broadly restate the law applicable to defined contribution plans or change the pleading standards to state a claim for breach of fiduciary duty. Rather, the Supreme Court's ruling in *Hughes* focused exclusively on the Seventh Circuit's

2

application of a "categorical rule" that offering several prudent investments and giving participants the choice to select those investments and control their recordkeeping fees cured any impact of also offering imprudent funds. *Hughes*, 211 L. Ed. 2d at 564. Finding that such a rule was inconsistent with ERISA, the Supreme Court "vacate[d] the judgment below so the [Seventh Circuit] may reevaluate the allegations as a whole." *Id*.

Here, while Defendants cited the Seventh Circuit's decision in *Divane*[4] many times in their briefing, they placed minimal reliance on the specific "categorical rule" rejected in *Hughes*—less than three pages of the briefing on the Motion to Dismiss apply the "categorical rule." (*See* Memo. Supp. Mot. Dismiss at 21-22; Reply Supp. Mot. Dismiss at 9-10 (a large menu of investment options available to participants); Memo. Supp. Mot. Dismiss at 14 (*Divane* indicated recordkeeping fees were reasonable as a matter of law)).

Plaintiff even acknowledged, as it relates to recordkeeping fees, that the portion of *Divane* relating to participant choice in incurring recordkeeping fees is "not at all analogous to this case." (*See* Plaintiff's Opp. to Mot. Dismiss at 3 ("Specifically, in order to have access to a very popular fund, the [Northwestern] Plan had to pay higher recordkeeping fees. . . . That's not at all analogous to this case.") (Doc. 14)). In *Divane*, the challenged recordkeeping costs were included in the fund's expense ratio, and therefore were paid only by participants who invested in the challenged fund. *Divane*, 953 F.3d at 890. Here, as Plaintiff recognizes, the recordkeeping fees that are the subject of Count I were paid on a per-participant basis, regardless of investment choice. (*See* Plaintiff's Opp. to Mot. Dismiss at 3).

---

[4] *Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020).

### B. *Hughes* Does Not Change the Stringent Pleading Requirements Applicable to the Complaint.

Even without the discrete argument rejected in *Hughes*, Defendants' Motion to Dismiss establishes that the Complaint fails to state a claim upon which relief could be granted. Nothing in *Hughes* casts doubt on other grounds for dismissing Plaintiff's complaint set forth in Defendants' Motion to Dismiss. For example, *Hughes* simply did not address the meaningful benchmark standard or the need for a plaintiff to have standing. Thus, the primary focus of Defendants' Motion to Dismiss is not adversely affected by *Hughes*.

#### 1. *Hughes* Does Not Disturb the "Meaningful Benchmark" Standard Applicable to "Excessive Fee" Cases.

A complaint seeking relief for breach of ERISA fiduciary duty based solely on excessive fees paid to a service provider must plausibly allege that the fiduciary's actions were objectively unreasonable. *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (ERISA plaintiffs need to plead allegations that show "'a prudent fiduciary in like circumstances' would have selected a different fund based on the cost or performance of a selected fund."); *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011) (requiring an ERISA plaintiff to plead no "hypothetical prudent fiduciary" would have made the same objective choice); *Anderson v. Intel Inv. Policy Comm.*, No. 19-CV-04618-LHK, 2022 U.S Dist. LEXIS 3946, at *45-46 (N.D. Cal. Jan. 8, 2022); *Albert v. Oshkosh Corp.*, No. 20-C-901, 2021 U.S. Dist. LEXIS 166750, at *3-4 (E.D. Wisc. Sept. 2, 2021); *also Divane*, 953 F.3d at 988. For such allegations to be plausible, the complaint must identify a "meaningful benchmark" comparison demonstrating that no prudent fiduciary would have made the same choice. *Meiners*, 898 F.3d at 822; *Anderson*, 2022 U.S Dist. LEXIS 3946, at *45-46; *Davis v. Salesforce.com, Inc.*, No. 20-cv-01753-MMC, 2021 U.S. Dist. LEXIS 73017 (N.D. Cal. Apr. 15, 2021). While *Divane* did not use the terminology "meaningful

benchmark," its analysis was functionally the same by stating that the complaint failed to identify a recordkeeper that would have accepted the lower fee and would have provided the same level and quality of services as the one selected by defendants. *Divane*, 953 F.3d at 991.

*Hughes* simply did not address the meaningful benchmark standard or its underpinnings in any way. Thus, the primary thrust of Defendants' Motion to Dismiss is not negatively affected by *Hughes*.

### 2. *Hughes* Did Not Kick the Can Down the Road to Summary Judgment.

The procedural posture of *Hughes* is important. The Supreme Court neither reversed nor affirmed the decision below. Instead, it remanded the case to the Seventh Circuit for a Rule 12(b)(6) do-over, directing that the Seventh Circuit "reevaluate the allegations as a whole," this time without relying on one particular argument.

If there is a theme to Plaintiff's Opposition to Defendants' Motion to Dismiss, it is that issues of prudence and benchmarks in ERISA fee cases are messy and should be deferred until the summary judgment stage. (*See, e.g.*, Plaintiff's Opp. to Mot. Dismiss at 7, 15 n.14, 19-20). *Hughes* did not embrace such an approach. If it thought there was no opportunity for the defendants to prevail on their Rule 12(b)(6) motion, the Supreme Court could have **reversed** *Divane* and **denied** defendants' motion to dismiss. But it did not. Instead, the Supreme Court remanded the case for the Seventh Circuit to decide the motion to dismiss in a new light. The Supreme Court also could have set forth a rule that issues of prudence and benchmarks are messy and ought to be handled at the summary judgment stage instead of the pleading stage. But it did not. In fact, the *Hughes* Court cited *Fifth Third Bancorp v. Dudenhoeffer*, in which the Supreme Court specifically held that Rule 12(b)(6) is an important mechanism for weeding out meritless ERISA complaints. 573 U.S. 409, 425 (2014).

5

*Hughes* is in fact a rejection of Plaintiff's argument that all of this should be sorted out at the summary judgment stage instead of the motion to dismiss stage.

### C. *Hughes* Instructed Courts to "Give Due Regard to the Range of Reasonable Judgments" Made by Fiduciaries.

While the *Hughes* holding is narrow, the decision also reinforces the importance of a careful, context-specific analysis of ERISA fiduciary claims at the motion to dismiss stage. *Hughes*, 211 L. Ed. 2d at 564-65 (quoting *Dudenhoeffer*, 573 U.S. at 425 ("Because the content of the duty of prudence turns on the 'circumstances . . . prevailing' at the time the fiduciary acts, . . . the appropriate inquiry will necessarily be context specific."). Further, because of the unique issues facing ERISA fiduciaries, which "implicate difficult tradeoffs," the Supreme Court also instructed that this careful analysis "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise" when evaluating the allegations at the Rule 12(b)(6) stage. *Id.* at 565. This instruction strikes at the heart of the Motion—the Complaint fails to "give due regard to the range of reasonable judgments a fiduciary may make" and instead seeks to substitute Plaintiff's judgment for that of the Plan's fiduciaries: "I think you paid too much."

For example, Count III seeks relief for the decision to offer the R6 Share Class because the A Share Class was cheaper, but only after accounting for revenue sharing—a practice that allows mutual funds to share a portion of the fees they collect with other entities providing services to the funds, often with less transparency and certainty. (Memo. Supp. Mot. Dismiss at 24-26 (citing *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 907 (7th Cir. 2013); Reply at 8-9). The Complaint fails to even plead enough facts to undertake the careful, context-specific analysis required of this Court at the pleading stage, however. Instead, it relies solely on speculative allegations without factual support that revenue sharing would be credited back to participants and somehow reduce the overall expense paid by the Plan participants for recordkeeping services. (*See,*

6

*e.g.*, Compl. ¶¶ 174). These sparse and speculative allegations simply do not allow this Court to undertake a careful analysis of whether selecting the cheaper R6 Share Class instead of the A Share Class was imprudent.

And, even accepting the speculative allegation that the A Share Class would be cheaper when accounting for revenue sharing as true, the direct fees associated with the R6 Share Class also have clear benefits, including the ability to provide transparency and certainty to Plan participants regarding the fees they are paying to Plan service providers.[5] (Memo. Supp. Mot. Dismiss at 24-26; Reply at 8-9). Thus, by selecting the R6 Share Class, which is already cheaper on its face, Defendants at most made a "difficult tradeoff[]" that falls within the "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 211 L. Ed. at 565. Giving "due regard" to this range of reasonable judgments, as the Supreme Court's decision in *Hughes* requires, Plaintiff's story that Defendants' process was imprudent in selecting the R6 Share Class is implausible.

The same is true with respect to the claims for recordkeeping fees (Count I) and managed account services fees (Count II). Plaintiff's sole basis to infer that Defendants followed an imprudent process in selecting the Plan's recordkeeper and management account services provider is cost. (*See, e.g.*, Compl. ¶¶ 120, 134, 189-192). Not only do these allegations fail to give factual support such that this Court can undertake a careful, context-specific analysis as to whether the selection of Empower was objectively unreasonable, but Plaintiff's theory fails to account for the numerous other factors a fiduciary must consider in selecting a recordkeeper or managed account

---

[5] The benefit of offering the R6 Share Class is perhaps best exemplified by the fact that many cases alleging that ERISA fiduciaries offered share classes that were too expensive, plaintiffs argue that offering a share class that is more expensive but permits revenue sharing over a cheaper share class without revenue sharing is breach of fiduciary duty—the opposite of Plaintiff's argument here. (*See* Memo. In Support at 24 n.14 (citing *Davis*, 2021 U.S. Dist. LEXIS 73017, at *9-11).

services provider. *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible [option] (which might, of course, be plagued by other problems)."). For example, Plaintiff's theory that a prudent fiduciary would always select the least expensive recordkeeper or managed account services provider is not plausible because it fails to account for the fact that a more expensive option often offers other benefits, such as better security, better services, and improved efficiencies, that justify a higher fee because it realizes greater benefits to participants. Thus, so long as the choice is not objectively unreasonable in comparison with peers receiving the same level and quality of services, selecting a more expensive option with better services falls within the "range of reasonable judgments a fiduciary may make." *Hughes*, 211 L. Ed. at 565.

### D. *Hughes* Did Not Address Standing or Other Arguments Made by Defendants.

With its narrow focus, *Hughes* has nothing to say about other arguments in Defendants' Motion to Dismiss that are independently sufficient bases to dismiss the Complaint unrelated to the fact that the Complaint fails to plausibly allege Defendants' were objectively unreasonable. For example:

- Plaintiff never invested in the R6 Share Class, but instead used the voluntary managed account services. He therefore lacks Article III standing to pursue Counts III and VI, which relate solely to fees associated with the R6 Share Class that Plaintiff never paid. (Mem. Supp. Mot. Dismiss at 20-21; Reply at 12-14).

- Offering the R6 Share Class, a cheaper share class without revenue sharing, rather than the A Share Class, a more expensive share class that allows for revenue sharing, falls within the range of reasonable judgments a fiduciary may make, particularly considering numerous cases alleging that offering a more expensive

8

- share class with revenue sharing, like the A Share Class, is imprudent. (Mem. Supp. Mot. Dismiss at 22-24; Reply at 8-9).

- Count III is based entirely on speculative allegations that revenue sharing available in the A Share Class would be credited back to participants to reduce the overall cost paid by participants, which are not sufficient to allege a plausible claim for relief. (Memo. Supp. Mot. Dismiss at 24-26; Reply at 8-9).

- The duty of loyalty claims (Counts I-III) fail because they merely repackage the duty of prudence claims without "allegations of self-interest or self-dealing." (Memo. Supp. Mot. Dismiss at 28-29; Reply at 14-15).

- The failure to monitor claims (Counts IV-VI) fail because the Complaint fails to plausibly allege any facts that the Director Defendants' monitoring process was flawed, and the allegations instead "read[] like legal conclusions as opposed to factual allegations.". (Reply at 15 (quoting *Nicolas v. Trs. Of Princeton Univ.*, No. 17-cv-3695, 2017 U.S. Dist. LEXIS 151775, at *13 (D.N.J. Sept. 18, 2017)); Memo. Supp. Mot. Dismiss at 29-30).

## III. CONCLUSION

*Hughes* supports granting Defendants' Motion to Dismiss. For each of the foregoing reasons, and the reasons stated in the Motion to Dismiss and Reply in Support of the Motion to Dismiss, Defendants request this Court dismiss the Complaint of Plaintiff Joshua Walter, individually and as representative of a Class of Participants and Beneficiaries of the Kerry Inc. Savings Plan.

Respectfully submitted,

*/s/ Brian J. Lamb*
Brian J. Lamb (Ohio 0055447)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: (216) 566-5500
Fax: (216) 566-5800
Email: Brian.Lamb@ThompsonHine.com

Melanie M. Lazor (Ohio 0095809)
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Phone: (513) 352-6700
Fax: (513) 241-4771
Email: Melanie.Lazor@ThompsonHine.com

Tony H. McGrath
JACKSON LEWIS P.C.
22 East Mifflin Street
Suite 800
Madison, Wisconsin 53703
Phone: (608) 729-5598
Fax: (608) 260-0058
Email: Tony.McGrath@jacksonlewis.com

*Attorneys for Defendants Kerry Inc., the Board of Directors of Kerry Inc., and the Benefits Committee of Kerry Inc.*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically on March 11, 2022 with the Clerk of Court using the CM/ECF system. Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

/s/ *Brian J. Lamb*