UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA WALTER,

        Plaintiff,

                                                                  Case No. 21-cv-0539-bhl

   v.

KERRY INC, et al.,

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

      In the United States, defined benefit pension plans have gone the way of the dodo. As of 2012, only 3% of U.S. employers offered such plans to their current employees. (ECF No. 1 ¶35.) Instead, most Americans are now invested in defined contribution plans like 401(k)s, which tie retirement savings to market performance. (*Id.*) Because plan participants are not guaranteed any particular payout—economies ebb and flow and so do their account balances—the Employee Retirement Income Security Act of 1974 (ERISA) imposes strict fiduciary duties upon defined contribution plan managers to ensure that participants' funds are not diminished by excessive administrative fees. In this case, Plaintiff Joshua Walter argues that Kerry, Inc., the Board of Directors of Kerry, Inc., the Benefits Committee of Kerry, Inc., and 30 John Does violated those fiduciary duties. He seeks to represent a class of thousands of current and former Kerry Plan participants. Defendants have moved to dismiss. Because Walter has plausibly alleged breaches of both the duty of prudence and the duty to monitor other fiduciaries, the motion will be denied with respect to those claims. The motion will be granted with respect to his claim for breach of the duty of loyalty.

## BACKGROUND ALLEGATIONS[1]

      From 2010 until early 2016 and then again from November 2016 to the present, Plaintiff Joshua Walter worked for Kerry, Inc. as a third shift production supervisor. (ECF No. 1 ¶¶12-13.)

---

[1] Allegations are drawn from the complaint, (ECF No. 1), and the Court accepts them as true at the motion to dismiss stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As a Kerry employee, Walter was one of nearly 5,000 participants in the Kerry Inc. Savings Plan (the Kerry Plan), a 401(k) defined contribution retirement plan, which manages over $444,400,000 in assets. (*Id.* ¶¶25-26.) These assets represent the value of plan participants' voluntary contributions to individualized accounts, as matched by Kerry, and put into various investment vehicles. (*Id.* ¶34.) Because administration of these plans is itself a full-time job, plan fiduciaries almost always hire retirement plan services providers (RPSP) or "recordkeepers." (*Id.* ¶38.) RPSP provide essential recordkeeping and related administrative (RK&A) services. (*Id.* ¶39.) There are two types of essential RK&A services. The first are known as "Bundled RK&A," and the second are called "Ad Hoc RK&A." (*Id.* ¶¶ 40-41.) The difference is that Ad Hoc RK&A services usually assess a fee based on an individual participant's particular usage of those services rather than charging a flat fee like Bundled RK&A services do. (*Id.* ¶41.) The combination of Bundled and Ad Hoc RK&A services is referred to as retirement plan services (RPS). (*Id.* ¶43.)

During the relevant class period, the Kerry Plan received RPS from an RPSP called Great-West Life and Annuity Company. (*Id.* ¶87.) According to Walter, Great-West charged each Kerry Plan participant an annual RPS fee of about $128. (*Id.* ¶120.) During the relevant class period, Great-West's subsidiary, Advised Assets Group, LLC provided managed account services for the Kerry Plan. (*Id.* ¶186.) Managed account services offer plan participants access to a managed account provider who invests their accounts in a portfolio of preselected investment options. (*Id.* ¶72.) For this service, Advised Asset Group charged a .45% fee on a participant's first $100,000, a .35% fee on a participant's next $150,000, and a .20% fee on assets greater than $250,000. (*Id.* ¶190.) As for investments, the Kerry Plan offered 19 different options, including target asset allocation, equity investment, and bond funds. (ECF No. 11-1 at 8-9.) Walter invested in some of these options, though not the Eaton Vance Atlanta Capital SMID – Cap R6 share class that this lawsuits challenges. (ECF No. 11 at 27.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, in ERISA cases, a plaintiff "does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

## ANALYSIS

Walter alleges violations of the ERISA fiduciary duties of prudence and loyalty and the duty to monitor other fiduciaries. (ECF No. 1 at 46-56.) At this stage, the dispute mainly centers on the duty of prudence claim. Walter argues that Defendants breached that duty when they authorized the Kerry Plan to pay unreasonably high RPS and managed account service fees and maintained certain funds within the Kerry Plan despite the availability of cheaper, identical options. (ECF No. 14 at 7-8.) Because the complaint plausibly alleges imprudence, the breach of duty of prudence claim will proceed at least past the pleading stage. The failure to monitor claim will also survive, while the duty of loyalty claim will be dismissed.

**I.     Walter Has Stated a Claim for Breach of the Duty of Prudence.**

"In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen*, 835 F.3d at 678 (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). In this case, neither side disputes that Defendants are plan fiduciaries, so to survive the motion to dismiss, Walter need only satisfactorily allege the second and third elements.

"Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts . . . the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (quoting 29 U.S.C. §1104(a)(1)(B)). There is prudence in being the early bird, less so the early worm. *See Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014). In this case, Walter offers three primary reasons to believe that, under the circumstances, Defendants employed an imprudent process. His complaint includes a chart that purports to show the excessive RPS fees Kerry Plan participants paid (ECF No. 1 ¶121); he identifies a cheaper alternative share class within one of the Kerry Plan's mutual funds (*id.* ¶154); and he explains why he believes the managed account services the Kerry Plan offered provided no material benefit. (*Id.* at 41-43.) Taken together, this evidence plausibly alleges imprudence. Defendants' attempts to assuage that conclusion fall flat.

In their initial briefing, Defendants asserted that their RPS fees were reasonable as a matter of law, citing *Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020), and *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020). But *Divane* is no longer good law; the Supreme Court reversed and remanded that case *sub nom* earlier this year. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 740 (2022) (holding that *Divane*'s "categorical rule is inconsistent with the context-specific inquiry that ERISA requires"). The Court explained that its precedent, especially *Tibble v. Edison Int'l*, 575 U.S. 523 (2015), precluded the possibility of categorically reasonable RPS fees. *Hughes*, 142 S. Ct. at 740. For a fee to be "reasonable as a matter of law," it must be reasonable in all seasons, during times to reap and times to sow. But prudence is not fixed like a cardinal direction. Defendants contend that any RPS fee under $213 per participant per year is per se reasonable and therefore prudent. This involves a number of factual assumptions that are inappropriate at the motion-to-dismiss stage. Suppose, for example, another RPSP contacted Defendants and offered to provide comparable RPS for only $100 per participant per year. Would anyone say an ERISA fiduciary, discharging its duties to defray "reasonable expenses of administering the plan," could prudently forgo the offer without further inquiry? 29 U.S.C. §1104(a)(1)(A)(ii). Surely not. Prudence is largely contextual; it defies categorization.

Defendants next argue that Walter's misguided calculations spoil his inter-plan RPS fee comparisons. The complaint purports to compare the annual RPS fees paid by participants across 17 similar defined contribution retirement plans. (ECF No. 1 ¶121.) To determine the average annual per participant RPS fee, the complaint divides the total of all administrative service fees reported on a plan's Form 5500 by the number of participants in that plan. This is, as Defendants' state, a flawed methodology because not every plan discloses both Bundled and Ad Hoc RK&A service fees on its Form 5500. For example, H&E Equipment Services, Inc. 401(k) Profit Sharing Plan's Form 5500 reported only recordkeeping service fees, excluding any ad hoc fees participants may have paid. (ECF No. 11 at 25-26.) Similarly, Crum & Forster Employee Savings Plan acknowledged that it paid over $100,000 for services not associated with the recordkeeping fees disclosed on its Form 5500. (*Id.* at 26.) The Kerry Plan, meanwhile, disclosed both its Bundled and Ad Hoc RK&A service fees. (*Id.*) But the fact that relevant disanalogies predominate for two of the 16 comparator plans does not sully the entire chart. In fact, as Defendants concede, the Kerry Plan and the Associated Materials, LLC 401(k) Retirement Plan disclosed very similar

information on their respective Form 5500s. (*Id.*) Yet the average annual per participant RPS fee for Associated Materials Plan participants was $49, while Kerry Plan participants paid $128.[2] (ECF No. 1 ¶121.) Defendants suggest that even these averages are unfit for comparison because they fail to distinguish between mandatory fees and those fees associated with elective use of ad hoc services. In theory, a few overzealous participants could spend lavishly on ad hoc services, thereby increasing the total RPS fee disclosed on the Form 5500 and throwing the per participant average out of whack. And the excessive use of ad hoc services—not any fiduciary's imprudent process—would be responsible for the apparently exorbitant per participant RPS fee. This is certainly one story, but the motion to dismiss stage is not the time for weighing competing explanations. Drawing reasonable inferences in Walter's favor, the chart plausibly alleges that Kerry Plan participants paid a suspiciously high RPS fee. That allegation is sufficiently plausible to support a claim for breach of the fiduciary duty of prudence. Whether it suffices after the factual record is developed at summary judgment is for another day.

Defendants also claim that Walter lacks standing to challenge the prudence of offering a share class in which he never invested. "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). But Walter seeks no exception. His claim is that Defendants' decision to offer the Eaton Vance Atlanta Capital SMID – Cap R6 share class instead of the cheaper but materially identical Cap A share class reflects an imprudent process. (ECF No. 1 at 34.) In a vacuum, a plaintiff who challenges only one of 19 investment options (and an option he never selected at that) would fail to plausibly allege a breach of the duty of prudence and also lack standing. This case, however, is not taking place in a vacuum. Defendant's choice of share class is a single piece in a puzzle meant to illustrate imprudence with respect to the "plan as a whole." *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("a violation of [29 U.S.C. §1109(a)] inures to the benefit of the plan as a whole"). Walter does not lack standing to submit this inculpatory evidence of imprudence because his other evidence establishes that, if Defendants were imprudent in their management of the plan, such mismanagement harmed him. It may be true that the imprudence of this particular share class did not directly limit the value of Walter's account, but his claim is for imprudence toward the Kerry Plan as a whole.

Finally, Defendants argue that Walter's own evidence contradicts his assertion that the Kerry Plan authorized excessive managed account service fees. Recall that the Kerry Plan's

---

[2] Or $84 according to Defendants' declaration. (ECF No. 11 at 23.)

managed account provider, Advised Assets Group, LLC, charged participants an annual fee of .45% on their first $100,000, .35% on the next $150,000, and .20% on assets greater than $250,000. (ECF No. 1 ¶190.) The complaint alleges that other managed account providers like Betterment, Vanguard, Charles Schwab, and Fidelity charged lower fees. (*Id.* ¶¶192-93.) It also states that Advised Assets Group, LLC added no material benefit because the asset allocations it offered were not materially different from those ubiquitously available on the open market. (*Id.* ¶195.) This part of the complaint cites to a 2014 United States Government Accountability Office (GAO) report that evaluated the efficacy of managed account services in 401(k) plans. *See* U.S. Government Accountability Office, *401(K) Plans: Improvements Can Be Made to Better Protect Participants in Managed Accounts*, (June 2014), available at https://www.gao.gov/assets/gao-14-310.pdf. As Defendants note, that report found the average managed account service fee to be .45%. *Id.* at 65 n.4. And nowhere in the report did the GAO conclude that managed account services provide no material benefit to plan participants, though it did emphasize the need to consider how service fees impact participants' accounts over time. *Id.* at 57. As Defendants' theory goes, then, the very report cited in the complaint establishes that Advised Assets Group, LLC charged, at worst, an average fee and provided some material benefit in exchange. As an initial matter, "average" is not the same as "prudent." Larger plans have increased bargaining power and certain efficiencies of scale that might allow them to negotiate lower per participant fees. (ECF No. 1 ¶50.) The Kerry Plan manages more assets than 99.65% of plans in the market. (*Id.* ¶26.) A plan that large does not necessarily establish a prudent process as a matter of law simply by hitting the average. *See Dudenhoeffer*, 573 U.S. at 425 ("the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts [so] the appropriate inquiry will necessarily be context specific"). Additionally, the GAO concluded that managed account services offer some benefit to plan participants under certain circumstances. It did not find that the particular managed account provider Defendants selected provided material benefit to Walter in this case. Thus, there is nothing in the GAO report that undermines Walter's allegations, and the plausible story they tell alleges a violation of the fiduciary duty of prudence.

    Considering the totality of Walter's allegations and drawing all reasonable inferences in his favor, the Court finds that he has plausibly alleged a breach of the fiduciary duty of prudence. Defendants' motion to dismiss that claim must therefore be denied.

## II. Walter Has Stated a Claim for Breach of the Duty to Monitor Other Fiduciaries.

The parties agree that Walter's failure to monitor claims are derivative of his breach of fiduciary duty claims. (ECF No. 14 at 27-28.) Because his breach of the duty of prudence claim survives, so too must his claim that Defendants breached their duty to monitor other fiduciaries. *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 953, 968 (E.D. Wis. 2009).

## III. Walter Has Not Stated a Breach of Duty of Loyalty Claim.

Plaintiff's complaint treats prudence and loyalty as coextensive duties. In the Seventh Circuit, though, a plaintiff only states a claim for breach of the duty of loyalty if he includes allegations of self-dealing. *See Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020); *Daugherty v. Univ. of Chicago*, No. 17-C-3736, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017). The complaint contains no such allegations, so the claim for breach of the duty of loyalty must be dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss, ECF No. 10, is **GRANTED in part and DENIED in part**. The motion is granted with respect to the breach of the duty of loyalty claim. The motion is denied with respect to the breach of the duty of prudence and failure to monitor claims.

Dated at Milwaukee, Wisconsin on May 27, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge